IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **MARGARETTE DUVERGER,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **REAL ESTATE SALES FORCE INC.,** a Florida corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages train real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA"). Plaintiff Margarette Duverger ("Plaintiff Duverger" or "Duverger") brings this Class Action Complaint and Demand for Jury Trial against Defendant Real Estate Sales Force Inc., ("Defendant" or "RESF") to stop the Defendant from violating the TCPA by training its agents to place pre-recorded telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Duverger, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.      Plaintiff Duverger is a resident of Miramar, Florida.

1

2.    Defendant RESF is a corporation registered in Florida, with its headquarters located in Coral Gables, Florida. Defendant RESF conducts business throughout this District and throughout Florida.

## JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.    This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District and into this District where the Plaintiff resides.

## INTRODUCTION

5.    As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2

8.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.     According to online robocall tracking service "YouMail," 4.7 billion robocalls were placed in November 2024 alone, at a rate of 157.6 million per day. www.robocallindex.com (last visited December 15, 2024).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

### COMMON ALLEGATIONS

13.     Defendant RESF is a real estate brokerage with over 475 agents and several offices throughout southern Florida.[3]

14.     RESF provides offices, support, technology and training to its agents.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/real-estate-sales-force-inc/about/
[4] https://resf.com/join-resf/

15.     RESF agents share their commissions with RESF, who generates revenue from every real estate transaction.[5]

16.     RESF has a vested interest in the success of its real estate agents, as those agents generate revenue for the corporation.

## RESF TRAINS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS

17.     Jorge Guerra Jr. is the CEO and broker of RESF.[6]

18.     Guerra is directly involved in the recruitment of new real estate agents, as well as the ongoing training of all of his real estate agents.

19.     In a podcast hosted by Real Estate Excellence Podcast, Guerra was asked to discuss his processes in recruiting real estate agents.[7]

20.     Guerra explains, "When I onboard an agent, all right, so I'll walk you through some of our processes. When I onboard an agent, if they are an experienced agent, I tell them in a very nice way, 'I'm going to rip you apart' you know, ***I'm going to talk to you about your schedule, your lifestyle, you know, what you're doing from a marketing perspective, what you're doing from a prospecting perspective***, which is usually zero. You know, they're usually professional marketers, but what are you doing from a prospecting perspective? And that's how I start my conversation. If you're a brand new agent, okay, after we work up some of the core stuff that I need you to train, you know, I tell you there's two things that I need you to create some consistency in. Marketing, you know, letting people know what you do for a living. You know, and

---

[5] Id.
[6] https://resf.com/meet-the-broker/
[7] https://www.youtube.com/watch?v=kYNV2IO6Rjk

*prospecting, asking for business consistently, and the way that I preach that is I tell people I want an hour a day*…"[8] (emphasis added)

21.     Guerra then goes on to state, "***The biggest culprit of an unsuccessful agent is the fact that they don't prospect consistently. They prepare, they buy the dialer, they get the scripts, you know. They look at the videos,*** but they don't go out there and swing. So for me, you know, *I want 45 minute to an hour every single day of prospecting*. If you have the tenacity to do that, you're going to be successful."[9] (emphasis added)

22.     Later in the above podcast, Guerra elaborates more on how he trains his agents to engage in prospecting, explaining, "Friday is called money call Friday. So Friday is where ***every single Friday we teach you prospecting*** on Friday. But Monday, you come into the office and we're prospecting. Tuesday, we're prospecting. Thursday we're prospecting. ***Friday we teach the class again and we keep on repeating that***."[10] (emphasis added)

23.     The prospecting that Guerra refers to is telephone prospecting, which includes placing cold calls to consumers.

24.     On the RESF website, money call Friday is displayed along with a picture where Guerra and most of the agents are displaying their hands to signify calling:

---

[8] Id. – 26 minutes, 45 seconds
[9] Id. – 27 minutes, 57 seconds
[10] Id. 31 minutes, 15 seconds

**$ FRIDAY LIVE MONEY CALLS $**

April 1, 2022



25.     The text on the aforementioned website page states, "Our agents had the first day of *LIVE prospecting* this past Friday at our Dadeland office. We had pizza, *went over scripts, techniques, and set the tone of what is expected*. This new training is going to be hosted EVERY Friday from 12:00-2:00pm *to sharpen your tongue and get you prepared* to win those listings. Make sure you come join us next week!" (emphasis added)

26.     Guerra worked with Jia Jiang, the owner of Rejection Therapy and the CEO of Wuju Learning, a company that teaches people and trains organizations to become fearless through rejection training, to host a 30-day prospecting challenge in which all RESF agents would be held accountable for their 1 hour of prospecting, daily.[12]

27.     Jiang makes it clear in the video that Guerra paid for all of his agents to gain free access to dareme.com, an accountability app that is used during the 1-hour daily prospecting stating, "So every day, we get on this app and we check in. We will check in. And this, you know,

---

[11] https://resf.com/friday-live-money-calls/
[12] https://youtu.be/qo9FEUsnUgM?feature=shared

Jorge, he made the investment on behalf of all of you. So if you do this, you get to do this for free. So, and it's, thank you Jorge…"[13]

28.     Guerra posted a video discussion he had with Michael Kelly, a top RESF real estate agent on the RESF YouTube channel:



29.     In the above discussion, Guerra asks Kelly what he does to stay relevant as a realtor. In response, Kelly answers, "***I'm making cold calls every day, Monday to Friday, a lot of times on Saturday***. I'm reaching out to people contacting them just, you know, introducing who I am and seeing if there's anything I can do for them."[15] (emphasis added)

30.     Later in the video Guerra asks Kelly what his most successful prospecting technique is, without ever addressing any concerns about cold calling. Kelly answers, "I believe

---

[13] Id. – 35 minutes, 19 seconds
[14] https://www.youtube.com/watch?v=k90U1pCKfoM
[15] Id. – 55 seconds

in prospecting the old fashioned way: ***cold calls***. You were asking me, I think I heard you say, what's your scheduling challenge? What we're doing, that's been really good because, you know, it forces me to be accountable to myself in writing, you know, that ***I put an hour in, every day. I don't believe there's any right time to call. You get people at any time of the day***. Or there's certain times of the day that are more efficient, probably, but when you have the most energy, when you feel like, you're, you know, ready to hop on the phone, ***that's the time to get on the phone***."[16] (emphasis added)

31.     In response to Kelly's answer regarding cold calling, Guerra doubles-down on cold calling by saying, "One study that I'd love to refer to you is the ***RedX 2015 study***, and the study was between two styles of agents. One that made under $70,000 and those that made over $250,000. ***Okay, the [difference] between those two agents was hours of prospecting***. One of them did two hours, the other one did five hours. What a huge difference in just keeping some consistency when it comes to prospecting! What a huge result it has on your income. One of the main reasons that we're doing the dare challenge, again, is, ***I want to make sure that we get at least an hour a day of prospecting***. And you know, if that's true, we're putting everybody on the trajectory to become a top agent."[17] (emphasis added)

32.     In referencing a RedX study, Guerra was referring specifically to cold calling. RedX is a service that informs real estate agents when property listings become expired. This service provides the names and phone numbers of consumers who have not consented to be contacted and a pre-recorded message delivering dialer to call them with:[18]

---

[16] Id. – 2 minutes, 58 seconds
[17] Id. – 4 minutes
[18] https://www.redx.com/

Find expired listing leads before other agents by checking out REDX, a real estate prospecting platform that automates your search. It eliminates the need to spend hours finding your next lead and allows you to start nurturing them before anyone else. Learn how to get expired listings through REDX and see how it will help you build a profitable business on expired listing leads.



<sup></sup>19

33.     On October 18, 2024 in a recent podcast episode with guest Jorge Guerra, the host asks Jorge Guerra what about "Cold calling, every realtors favorite task." Jorge Guerra responds ***"This is like diet of real estate. Nobody wants to do it but you have to do it."***[20] He goes on to say "I think cold calling is not going to go away." He then goes on to demonstrate how he recently used AI to generate a list of individuals to call and it generated scripts for him to use on those calls. He states "cold calling in the blind is fun, but now we have artificial intelligence that can dig into that data and can really point you in the right direction."

---

[19] https://fitsmallbusiness.com/how-to-get-expired-listings/
[20] https://www.youtube.com/watch?v=h7dXlV8cU7A



**Episode 79: How to Harness the AI Revolution**



30 views  Oct 18, 2024  RWorldTalk - South Florida Real Estate
Jorge Guerra, Florida Realtors® Treasurer, discusses the importance of staying current with technology at the state level. He sees value in tech-based solutions like Proptech, which experts

34.     As a result of the above training, RESF real estate agents have referenced cold calling as a part of their job/skills in working for RESF, such as:



**Maria Elena Haupert** · 3rd
Realtor at RESF real estate sales force
Miami-Fort Lauderdale Area · Contact info
137 connections

Message   + Follow   More

RESF real estate sales force

Universidad del Norte

## About

Dynamic, well-qualify, results-oriented sales professional with years of successful expertise in positions of increasing responsibility and duties. Top-performer with track record of consistently meeting or exceeding sales goals and customer expectations. Providing Total Quality Customer Service.
Proven ability to Develop New Business, Prospect/Cold Call, Convert Competitive Accounts.  [21]



Jovanny Valdez
Sales Development Representative 🧑 | Real Estate Negotiator 🤝



**Real Estate Salesperson**
Real Estate Sales Force, Inc · Full-time
May 2022 - Jul 2023 · 1 yr 3 mos
Miami, Florida, United States · Remote

• Orchestrated property tours and executed comprehensive sales cycles with an average of 12 touch points per lead, from cold outreach and email marketing to closing, reducing the overall sales cycle to an average of 35 days.
• Proactively managed relationships with high-net-worth clients through over 50 weekly inbound sales calls, successfully re-engaging past clients and converting nurtured prospects into active buyers and sellers.
• Forged and maintained B2B partnerships with vendors and worked closely with contractors, title agents, loan officers, and insurance agents to ensure seamless closings of property contracts.

💎 Sales Strategy, Sales and +23 skills  [22]

35.     As per the above, Guerra directs his real estate agents to engage in prospecting, which includes cold calling to generate real estate commissions for the buying and selling of properties using pre-recorded message delivering dialers.

---

[21] https://www.linkedin.com/in/maria-elena-haupert-16a90429/
[22] https://www.linkedin.com/in/jovannyvaldez/

36.     As a result of this training, consumers are receiving unsolicited pre-recorded calls, despite having their phone number's registered on the DNC, as per Plaintiff's experience.

37.

38.     Defendant RESF profits from the unlawful telemarketing activities that resulted in the filing of this Complaint.

39.     In response to these calls, Plaintiff Duverger brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF DUVERGER'S ALLEGATIONS

40.     Plaintiff Duverger is the subscriber and sole user of the cell phone number ending with 9074.

41.     Plaintiff Duverger registered her cell phone number on the DNC on October 10, 2006.

42.     Plaintiff Duverger uses her cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

43.     Plaintiff Duverger's cell phone number is not associated with a business and is not used for business-related purposes.

44.     Plaintiff Duverger pays for the use of her cell phone personally. It is not reimbursed by a business.

45.     On December 3, 2024, Plaintiff Duverger received 4 unsolicited calls to her cell phone from 954-483-4278:

| | | |
|---|---|---|
| **Rifkin Barry**<br>(954) 483-4278 | ☊ | Dec 3 |
| **Rifkin Barry**<br>(954) 483-4278 | ☊ | Dec 3 |
| **Rifkin Barry**<br>(954) 483-4278 | ☊ | Dec 3 |
| **Rifkin Barry**<br>(954) 483-4278 | ☊ | Dec 3 |

46.     The calls were not answered, but a voicemail was left from one call containing background sounds, but no speech.[23]

47.     On December 4, 2024 at 11:58 AM, Plaintiff Duverger received a 5th unsolicited call to her cell phone from 954-483-4278.

48.     This call was not answered, but a pre-recorded voicemail was left stating:

(begins with background/hold music) "Hi there. This is Barry Rifkin. Please give me a call back when you have a moment. 954-483-4278."[24]

49.     Plaintiff Duverger believes that this voicemail was pre-recorded because it begins with background/hold music that is followed by a hard break and then a pause before the agent speaks. The voicemail message itself sounds disjointed and it's generic.

50.     Rifkin is a RESF real estate agent, and his phone number is 954-483-4278:

---

[23]
https://www.dropbox.com/scl/fi/mob2mpgxlqnm2eure91f2/19544834278_261489142647022919 9414.amr?rlkey=ejn8cxg3p4f447n3ahpk3xwcb&dl=0
[24]
https://www.dropbox.com/scl/fi/aeq2yttk26ps9h1vmwaex/19544834278_260460864337077119 0479.amr?rlkey=yvug5qezh1rof6fz43jbzl1qn&dl=0



51.     Rifkin has been a real estate agent for RESF since March 11, 2019:



52.     As of December 15, 2024, Rifkin is still listed as a real estate agent for RESF.[27]

53.     Frustrated by the unsolicited calls that she received, Plaintiff Duverger called 954-483-4278 back on December 4.

---

[25] https://resf.com/agents/barry-rifkin/
[26] https://www.facebook.com/barry.rifkin.1
[27] Id.

54.     Rifkin answered the call and told Plaintiff Duverger that he called her to let her know that a property sold in his neighborhood and he wanted to offer his services selling Plaintiff's property.

55.     The intention of both calls that he made was the same, to offer his business services to the client.

56.     Plaintiff Duverger was not looking to purchase or sell a property.

57.     Plaintiff Duverger has never provided her cell phone number to RESF or any of its real estate agents.

58.     The unauthorized solicitation telephone calls that Plaintiff Duverger received from or on behalf of Defendant RESF have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

59.     Plaintiff listened to both of the voicemails that Rifkin left on her voicemail.

60.     Seeking redress for these injuries, Plaintiff Duverger, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

61.     Plaintiff Duverger brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) an RESF affiliated agent called on their cellular telephone number (2) using an artificial or pre-recorded voice.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) an RESF affiliated agent called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

62.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Duverger anticipates the need to amend the Class definitions following appropriate discovery.

63.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

64.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     whether Defendant or its agents placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c)     Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

65.     **Adequate Representation**: Plaintiff Duverger will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Duverger has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Duverger and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Duverger nor her counsel have any interest adverse to the Classes.

66.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Duverger. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Duverger and the Pre-recorded No Consent Class)**

67.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68.     Defendant and its agents transmitted unwanted solicitation telephone calls to Plaintiff Duverger and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

69.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Duverger and the other members of the Pre-recorded No Consent Class.

70.     The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Duverger and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Duverger and the Do Not Registry Class)**

71.     Plaintiff repeats and realleges paragraphs 1-66 of this Complaint and incorporates them by reference herein.

72.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

73.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

74.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Duverger and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Duverger and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

76.     As a result of Defendant's conduct as alleged herein, Plaintiff Duverger and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

77.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Duverger requests a jury trial.

Respectfully Submitted,

**MARGARETTE DUVERGER**, individually and on behalf of all others similarly situated,

DATED this 1st day of January, 2025.

By: /s/ *Stefan Coleman*

Stefan Coleman
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*